# OCTOBER, 1934

THE STATE OF TEXAS EX REL. RALPH CANDLER ET AL. V. THE COURT OF CIVIL APPEALS, FOURTH SUPREME JUDICAL DISTRICT, ET AL.

Motion No. 11,544. Decided October 2, 1934.
(75 S. W., 2d Series, 253.)

*Joe Burkett,* of San Antonio, for relators.

*Johnson, Slatton, Rogers & Johnson,* of San Antonio, and *Charles L. Black,* of Austin, for respondents.

MR. JUSTICE GREENWOOD delivered the opinion of the Court.

On the 1st day of October, 1934, the relators, Ralph Candler, Frank Campbell and J. L. Burd, resident tax-paying citizens and voters of the State of Texas and of Bexar County, filed in the Supreme Court of Texas, by their attorney, in the name of the State of Texas, a motion for leave to file petition for mandamus against the following named respondents and none other: The Court of Civil Appeals for the Fourth Supreme Judicial District of Texas, at San Antonio, Bexar County, Texas, and of Maxey Hart, Clerk thereof, and of the Hon. John

H. Bickett, Chief Justice and Hon. Ed. W. Smith and Hon. W. O. Murray, Associate Justices thereof.

Relators allege that "an information in the nature of a quo warranto" was filed, on September 14, 1934, in the 94th District Court of Bexar County, Texas, by The State of Texas, by Hon. Walter Tynan, District Attorney of Bexar County, on the sworn application and petition of Ralph Candler, Frank Campbell and J. L. Burd, against James V. Allred, W. W. Heath, Secretary of State, R. G. Waters, Campaign Manager of the said James V. Allred, R. E. Phillips, Martin Wright, R. B. Stanford, O. H. Allred, Gerald Mann, C. A. Teagle, H. C. Hughes and W. C. Todd, assistant campaign managers of the said James V. Allred; and James E. Kilday and Albert Sidney Johnston, as former Chairman and Secretary of the State Democratic Convention recently held at Galveston, Texas, and which adjourned, sine die, on September 11, 1934.

Relators aver that the defendants, except W. W. Heath, James E. Kilday and Albert Sidney Johuston, grossly violated the Corrupt Practice Act with reference to the excessive expenditures, illegally, of money in furthering the campaign of and securing the nomination of the said James V. Allred, candidate for Governor, during the Democratic Primary campaign and election, and under authority of Article 3173, Revised Civil Statutes of Texas, the relators sought injunction from the district court against the defendants Kilday and Johnston, as former Chairman and Secretary of the State Convention, from certifying the name of the said James V. Allred to the Secretary of State, W. W. Heath, on the ground that the State Convention had adjourned on September 11th, and that said defendants Kilday and Johnston were no longer officers of said Convention, and hence were without authority in law to certify the name of the said Allred to the said W. W. Heath, Secretary of State. Relators sought to restrain the said W. W. Heath, as Secretary of State, from receiving and filing said certification from the said Kilday and Johnston, and sought further to restrain the said Heath from in any manner certifying the name of the said Allred to any of the various Election Boards throughout the State, pending a hearing on the merits of the case, in order that the name of the said James V. Allred, may not appear on the official Ballot at the General Election as the Democratic Nominee for Governor, in case the Court found, on a trial on the merits of the case, in October, that the said Allred had, in fact, exceeded the expenditures and had violated the other provisions of the Corrupt Practice Act. Articles 3168 to 3173, inclusive, 1925 Revised Civil Statutes of Texas.

Relators aver that their information and application for injunction was duly presented to the Hon. W. W. McCrory, Judge of the 94th District Court, Bexar County, Texas, on the 14th day of September, 1934, and was ordered filed by him, and process issued thereon, and that said judge granted a temporary restraining order against W. W. Heath, Secretary of State, and against James E. Kilday and Albert Sidney Johnston, restraining each from the certification of the name of the said James V. Allred, pending a hearing on the merits of the case, and proper process was issued and served on said defendants in due time.

Relators show that on September 17th, 1934, all defendants duly appealed to the Hon. Court of Civil Appeals of the Fourth Supreme Judicial District at San Antonio, and afterwards, on September 20, 1934, the case was submitted and orally argued by both sides; that the relators were not furnished briefs of the appellants "until immediately before said cause was set for argument on the morning of September 20th, hence had no opportunity to present brief supporting their contentions, and called the matter to the attention of the Court, asked two days allowed by statute to file answer to Appellants' brief, but this request was refused," and relators, after oral argument, were allowed only one day in which to prepare and file their briefs, which was done.

Relators allege that on September 22nd, late in the evening, the Honorable Court of Civil Appeals rendered judgment dissolving and reversing the temporary restraining order of the Court below, by a divided Court; thereafter, on September 25th, 1934, a supplemental decision was filed therein by the two Associate Justices, Hons. Ed. W. Smith and W. O. Murray.

Relators further show that within six days after the rendition of judgment and within three days after the filing of supplemental opinions, on September 28, 1934, "the relators presented their motion for rehearing to the Clerk of the Court of Civil Appeals, who advised counsel for relators, by letter, that the Court had directed that the motion for rehearing be not filed on account of the refusal of the District Attorney to join in same, but that the Court directed him further to say they would consider a motion to file the motion for rehearing. Thereupon counsel for relators telephoned one of the justices of the Court of Civil Appeals an inquiry as to whether the Court had authorized the Clerk's letter, when the justice informed him the letter reflected the Court's action, that he himself had dictated the letter.

Relators finally allege that the errors assigned in their mo-

tion for rehearing are such as to show, on proper application for writ of error, after disposition of the motion for rehearing in the Court of Civil Appeals, jurisdiction in the Supreme Court of various questions involving determination of the constitutionality of the statutes, of the construction of statutes, and involving the determination of whether the decision of the Court of Civil Appeals conflicted with decisions of the Supreme Court and whether the Court of Civil Appeals erred in deciding that the District Court was without jurisdiction of this controversy.

The ground for issuance of mandamus by the Supreme Court to compel the Clerk and Judges of the Court of Civil Appeals to receive, consider, and determine their motion for rehearing, in the language of relators' petition, is that "it is the plain, legal and statutory right of these Petitioners—Appellees in the Court of Civil Appeals—to file, within fifteen days after the rendition of judgment, a motion for rehearing, have same presented to and passed upon by the Court; that it is, likewise, the plain, legal and statutory duty of the Clerk of said Court, to file Appellees' Motion for Rehearing, when presented within the said fifteen day period, and it is also the plain, legal and statutory duty of the Court of Civil Appeals and the Judges thereof, to consider same, pass upon the merits thereof, and render decision thereon, which said Clerk and said Court of Civil Appeals for the Fourth Supreme Judicial District, and the respective Judges and Members thereof, have failed and refused to do and still fail and refuse to do, which amounts to a refusal, on the part of said Clerk and said Court and the respective members thereof, to perform a plain, obvious and legal and statutory duty." And, "that the said refusal of the Clerk to file, and the Court of Civil Appeals to hear, consider and decide said Motion for a Rehearing, timely presented to be filed by Appellee, has denied and will deny these Petitioners of their valuable, substantial and statutory and constitutional right to be heard by and before the Courts of the land, and will deprive them of their right to procure a writ of error from the decision of the Court of Civil Appeals—the errors assigned in their Motion for Rehearing being the necessary and legal grounds upon which to predicate their Application for Writ of Error to the Supreme Court of Texas, as made and provided by law and the rules of said Supreme Court of Texas."

The above hurried statement, almost wholly in the words of relators' counsel, will suffice. This opinion is being written within a few minutes after the submission of relators' motion

and accompanying exhibits. Time forbids unnecessary delay in order to fulfill the commands of the statutes invoked by relators.

■ The established principles of law requiring relators' motion to be overruled by the Supreme Court are so numerous that we can undertake to state only a few.

First. The motion must be refused for want of a necessary party plaintiff.

Staples v. State, 112 Texas, 65, 245 S. W., 639, is decisive here. In that case three private citizens, such as relators, invoked the same statute now relied on to prevent the name of Earle B. Mayfield from appearing on the official ballot in the general election as democratic nominee for United States Senator. They brought their quo warranto suit as qualified voters in the name of the State, alleging excessive and unlawful primary expenditures. The District Judge granted them permission to file their suit and granted a temporary injunction restraining the Secretary of State and other election officers from certifying or placing Mayfield's name on the ballot.

Secretary of State Staples and his co-defendants appealed from the order granting the temporary injunction to the Dallas Court of Civil Appeals. The first question certified to this Court from the Court of Civil Appeals as here restated was: "Were the appellees possessed of the legal capacity and have they the right to institute and maintain this suit under section 9 of Chapter 88 of the Acts of the 36th Legislature?" Section 9, Chapter 88, just mentioned, is now Article 3173 (R. S., 1925) under which relators brought their action.

Mr. Justice Pierson wrote the opinion of the Court in the Staples case, saying:

"Our answer to Question No. 1 is that appellees were not possessed of legal capacity or right to institute and maintain this suit, and, therefore, the District Court and the Judge of the District Court of Navarro County were without jurisdiction to act upon or hear same."

The ground for the opinion was admirably stated in these terse sentences:

"It is necessary for the State to be a party where the action is for the benefit of the public at large, though growing out of a party primary election. The statute cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others. Section 21, Article 5, and Section 22, Article 4, Constitution of Texas."

"That it was the legislative intent that the usual procedure

by quo warranto should here be followed—that of an action brought by a county attorney or a district attorney or the Attorney General upon the relation of any citizen—is supported not only by the fact that this procedure had a well defined status under all the decisions at the time the Legislature enacted Section 9, but is further strengthened by Article 368, Revised Statutes, which Article the Legislature is presumed to have had in mind. That Article reads as follows: 'It shall be the duty of district and county attorneys to institute and prosecute quo warranto proceedings against persons and corporations in such cases and under such circumstances as are prescribed in article 6403 herein, and in such other cases as may be prescribed by law.'

"This is the natural construction of Section 9, taken as a whole, giving full force to the phrases 'at the suit of any citizen' and 'proceedings by quo warranto.'"

To the same effect see State v. Heath, 44 S. W. (2d) 398, and State v. Nelson, 170 S. W., 814.

Spelling clearly states that the state officer has full control of such a proceeding as that begun in the District Court "both as to instituting it and *conducting* it." He further states that the district attorney may ordinarily dismiss a quo warranto proceeding over the relators' objection, because the relators perfom no more important or different office from that of an informer or state witness in a criminal action. Spelling, Injunctions and Other Extraordinary Remedies, Vol. 2, Section 1835.

Speaking on the same subject, the Supreme Court of Illinois said:

"His being a relator did not convert a purely public suit into a private one, and entitle him, as against the Attorney General, to prevent its dismisssal." Hesing v. The Attorney General, 104 Ill., 292, 294.

When the District Attorney declined to join in the motion for rehearing of the decision of the Court of Civil Appeals to the effect that the court below was wholly without jurisdiction, he, in effect, abandoned the suit and refused to longer prosecute same. Had the District Attorney needed judicial sanction of his act he had it from the Court of Civil Appeals then clothed with jurisdiction to summarily order dismissal of relators' case by the District Court.

Since the statute is to be enforced for the benefit of the State and the public at large, and since the District Attorney refuses to join in any proceeding in the Court of Civil Appeals or here, the motion cannot be granted for want of the necessary party plaintiff.

■ Second. The petition we are requested to order filed fails completely for necessary parties defendant. It is obvious that the principal adversary party to the proceeding which relators seek to prosecute in the Supreme Court is James V. Allred. The judges of the Court of Civil Appeals have no real interest save to see the law righteously enforced. The parties actually having an interest who were made parties in relators' petition in the District Court, were the duly certified nominee of the democratic party for the office of Governor and some election officers. Neither Allred nor any election officer nor any member of the State Democratic Executive Committee is made a respondent in relators' petition here. Unless we were to change the law as declared soon after the establishment of the Supreme Court of the State and thereafter steadily announced, we could not grant the motion for leave to file the petition for mandamus, because of the absence of necessary respondents. Smith v. Power, 2 Texas, 57; Cullem v. Latimer, 4 Texas, 329; Winder v. Williams, 23 Texas, 601; Nevell v. Terrell, 99 Texas, 355, 87 S. W., 659; Nevitt v. Wilson, 116 Texas, 29, 285 S. W., 1079; City of Houston v. Allred, 123 Texas, 35, 66 S. W. (2d) 655.

■ Third. The mandamus must be denied because the judges of the Court of Civil Appeals have offered to consider the very question relators seek to make them consider, which is relators' right to file a motion for rehearing. The Court of Civil Appeals, by formal letter, and by a justice's telephone conversation, invited relators very courteously to file in that Court a motion for leave to file a motion for rehearing. Had relators complied, the Court of Civil Appeals must necessarily have proceeded to determine, first, relators' right to have their motion considered; and second, if such right were granted, then the Court must have considered on its merits the motion for rehearing. Mandamus never lies to compel judges and clerks to do what in all essential particulars they are offering to do.

Speaking through Chief Justice Cureton, this Court has already said:

"The rule is an elementary one that a writ of mandamus will not lie to compel the performance of an act which the respondent shows a willingness to perform without coercion." Ferguson v. Huggins et al., 122 Texas, 95, 102, 52 S. W. (2d) 904.

■ Fourth. The Supreme Court has too often declared this proceeding to be summary for relators to have the only alleged right on which to base their motion and petition, to-wit: the right to the *ordinary statutory time* for trial and appellate

court procedure, including the time allowed for filing motion for rehearing in the Court of Civil Appeals. This claim, if sustained, would necessarily have made relators' suit moot from the moment they filed it. Because it is evident the statutory times for trial, appeal, and writ of error must have been exhausted before the election. The only thing which would ever enable effect to be given to the primary contest statutes is the summary power granted the courts by the closing words of Article 3173, viz: "All such proceedings so instituted shall be advanced, and *summarily heard and disposed of* by both the trial and appellate courts." It is not inconceivable that an agreed contest case, with all possible speed in procedure, also agreed upon, might not be finally determined before the election. But, we have no such case.

Nothing is better settled than that the Court of Civil Appeals had the discretion under the quoted words of the statute to summarily refuse to permit the filing of any motion for rehearing and to order the dismissal of the suit in the District Court. Indeed, the Supreme Court, under Article 3173, has ordered the District Court to immediately dismiss a case for want of jurisdiction, when nothing was before the Supreme Court save certified questions. Staples v. State, supra.

In the case of Sterling v. Ferguson, 122 Texas, 123, 147, 53 S. W. (2d) 753, in an opinion by all three of the present members of this Court, it is said:

"Immediately on the filing of this opinion the Clerk of this Court is directed to issue the mandate and certificate to the Court of Civil Appeals and the mandamus to the Secretary of State. This is a summary proceeding under the statutes, the judgment is final from its rendition, and motions for new trial will not be filed nor considered." Sterling v. Ferguson et al., 122 Texas, 146, 147.

In Thomason v. Seale, 122 Texas, 160, 53 S. W. (2d) 764, which was governed by the summary statutory provision, the ordinary statutory right to file a motion for rehearing was not only denied, but the District Judge was ordered to at once enter a decree in conformity with our decision.

■ Fifth. The Supreme Court concurs in the conclusion stated in the opinion of Chief Justice Bickett, in words as follows:

· "The Constitution of Texas having prescribed the requisite qualifications for one to be the Governor of the State and having fixed the grounds of ineligibility applicable to that officer, it is beyond the power of the Legislature to add another ground of disqualification."

We deem it best to add only a few words to the clear discussion of this question in the opinion of the Chief Justice. On this point, his opinion firmly rests on Dickson v. Strickland, 114 Texas, 176, 265 S. W., 1012. The question there presented was not which eligible candidate had become a primary nominee by a majority of valid elector's votes, under the primary statutes, as in every other similar case where this Court has maintained the jurisdiction of the courts. The main question in that case was whether the disability of coverture rendered Mrs. Ferguson ineligible to be Governor. The question here is simply whether a nominee had been rendered ineligible under a statute adding to the tests of eligibility specified in the Constitution. The Court held in Dickson v. Strickland, supra, that the constitutional tests of eligibility to hold the Governor's office could not be altered by statute. Chief Justice Bickett's opinion follows that decision.

■ Sixth. Under recent decisions of this Court it was correctly held by the Court of Civil Appeals that this case was moot. Sterling v. Ferguson, 122 Texas, 140 to 147. Every argument advanced by relators' counsel is rejected in the opinion in that case.

In the latest, or near the latest case, in the Supreme Court before the last general election it was said:

"We think it plain, as a matter of law, that Judge Dean could not, even on September 30, 1932, have rendered a judgment which would have become final in time to be of any avail to the contestee or contestant, *in view of the statutory right of appeal, which is guaranteed to both parties.* Love v. Wilcox, 119 Texas, 256, 271, 28 S. W. (2d) 515." (Italics ours.) Thomason v. Seale, 122 Texas, 160, 53 S. W. (2d) 764.

Without writing more, we state our view that all actions of the Court of Civil Appeals appear to have been correct. The motion for leave to file the petition for mandamus is therefore overruled, and the Clerk of this Court is directed to file no motion for rehearing.